(No. 25540.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* ALICE AUSTIN *et al.* Plaintiffs in Error.

*Opinion filed April 17, 1940—Rehearing denied June 12, 1940.*

R. E. SMITH, for plaintiffs in error.

JOHN E. CASSIDY, Attorney General, IVAN A. ELLIOTT, State's Attorney of White county, CLARENCE E. SOWARD, State's Attorney of Hardin county, and A. B. DENNIS, for the People.

Mr. JUSTICE JONES delivered the opinion of the court:

Alice Austin and Theodore Simmons were convicted of the murder of Earl Austin, and each was sentenced to imprisonment in the penitentiary for a term of fourteen years. They were indicted in Hardin county, where Earl Austin was killed, but obtained a change of venue and were tried before a jury in the circuit court of White county. Ira Scott was also indicted with defendants for the murder, but he pleaded guilty in Hardin county. He had not been sen-

tenced at the time of this trial. Defendants contend they were not proved guilty beyond a reasonable doubt.

Austin was killed early Monday morning, March 20, 1939, by the explosion of dynamite which had been so placed in the truck he was driving that the heat of the motor exploded it. Lacine McDowell, who was riding with him, was also seriously injured, one leg being blown off.

It appears from the evidence that defendant Alice Austin and Earl Austin had been having domestic trouble for a number of years and had separated more than once. For some time prior to Austin's death they had been separated. Austin had filed a suit for divorce and she had filed a counter-claim asking for divorce. Since 1923, when he was fifteen years old, defendant Simmons had lived with the Austins a great deal of the time. After the Austins separated the last time in May, 1938, Simmons continued to live in the Austin home. He and Mrs. Austin were frequently seen together in public places. It also appears that after this separation Austin lived, at least a great part of the time, at the home of John A. McDowell, and was apparently infatuated with McDowell's daughter, Lacine.

The day before Austin was killed, George McDowell, Lacine McDowell and he attended a birthday dinner. About sundown they returned to the McDowell home, which was located five miles from Cave-in-Rock in Hardin county. Austin parked the truck at a cross-roads about a half-mile from the McDowell home, as was his custom when the road leading to the McDowell home was bad, and they walked the rest of the way. Austin slept with George McDowell and did not leave the house until about 5 :30 o'clock the next morning. At that time he and Lacine McDowell left together. Austin was going to take her to work, as he usually did. When he started the motor they noticed an unusual odor and Austin got out to investigate but could find nothing wrong. He then started driving to Cave-in-Rock and had driven about a quarter of a mile when the explosion occurred.

He was taken to the Rosiclaire hospital and died a few hours later.

Four witnesses for the people testified to having heard Alice Austin threaten to kill her husband. The threats were made from a few months to a few days before Austin was killed. One of these threats, while she was carrying a pistol and waiting for Austin to appear, was made when she was with defendant Simmons. About six weeks prior to his death she told one witness that before she would see her husband get a divorce from her she would see Earl, Lacine and the truck "all blowed to hell." It is evident she was quite disturbed about the divorce proceedings and determined that Austin should not obtain a divorce. She was also determined that no one else should become the beneficiary of Austin's life insurance policy.

Ira Scott, the defendant who pleaded guilty, testified for the People. According to his testimony he saw Simmons in Cave-in-Rock late in the afternoon on the Saturday before Austin was killed on Monday morning. Simmons asked him if he had any dynamite and asked him to help him tear up a truck, promising him $50. Scott told him he did not have any dynamite and would not help him. He made no arrangements to meet Simmons later, but the next night he went to Frayley's filling station looking for him, having changed his mind about helping to dynamite the truck. Between 7:00 and 8:00 o'clock that evening Simmons drove up to the rear of the filling station and told Scott to get in, which he did. Simmons was driving a green Plymouth four-door sedan, which fits the description of Alice Austin's car. They drove out to where Austin's truck was parked, a distance of about five miles, and drove about sixty or sixty-five miles per hour, although the road was of crushed rock and there were many curves and hills in it. Scott testified the dynamite and fuse were already in the car when he got in it. They parked the car about fifty or seventy-five yards from the truck and walked to the

truck. They worked together and tied the dynamite under the floor boards and tied the fuse to the exhaust pipe. They were there about two or three minutes. Simmons furnished Scott the knife with which to split the fuse. A knife was taken from Simmons when he was arrested, and in the Harrisburg jail Scott picked it from several knives as the one he had used in splitting the fuse. Scott denied he knew there would be anybody in the truck when the dynamite exploded. After they completed the work they drove back to Cave-in-Rock and Simmons let Scott out at Frayley's filling station.

Defendants set up the defense of alibi. As a matter of fact, when Mrs. Austin was served with the warrant of arrest she told the sheriff she had an alibi and a good one. The evidence for defendants to support this claim of alibi is to the effect that about 7:00 o'clock Sunday evening Simmons and Mrs. Austin drove to the home of Mr. and Mrs. Arch Shoemaker in Cave-in-Rock, and asked them to go to a movie in Eldorado. Shoemaker did not want to go, saying he did not have any money and also that he would have to shave and change clothes. Simmons offered to pay their way to the show, and after a few minutes the Shoemakers decided to go. Mrs. Austin suggested that Simmons go get some gasoline for the car while Shoemaker got ready, and Simmons left. He testified he bought gasoline at Frayley's filling station and went directly from there to Shoemaker's and was not gone over ten or fifteen minutes. The length of time he was gone is uncertain. Mr. and Mrs. Shoemaker thought he was gone about fifteen minutes but said it might have been longer. When Simmons returned Shoemaker had finished shaving and was changing clothes. They left for the show about 8:30 o'clock. The evidence is in conflict as to the speed that could be made on the road from Cave-in-Rock to where the car was parked. They returned from the show to the Shoemaker home about midnight. They had pie and coffee and left about 2:00

o'clock A. M. Simmons stayed the rest of the night at the Austin home. Neither of them undressed. They testified Mrs. Austin had a heart attack about the time they arrived home from the Shoemakers. No doctor was called.

That is the substance of the evidence, though there is other evidence contradicting some of the above testimony. It is obvious that Earl Austin's murder was the result of a fiendish design and was not committed on the spur of the moment. It was a crime that required planning and preparation. It further required a knowledge of where Earl Austin was staying at night and where he kept his truck.

As to defendant Simmons, there is direct evidence of his guilt. It is true this direct evidence was given by a confessed accomplice. The rule is that while the testimony of an accomplice must be received with suspicion and acted on with great caution, it is competent evidence, and a conviction may be sustained on the uncorroborated testimony of an accomplice if it is of such a character as to convince the jury, beyond a reasonable doubt, of the guilt of the accused. (*People* v. *Dabbs*, 370 Ill. 378; *People* v. *DeRose*, 359 id. 512; *People* v. *Piech*, 333 id. 293. Here, parts of Scott's testimony are improbable, such as his statement that he did not know anybody would be in the truck, though he knew there would be no explosion until the motor was running. But it must be remembered that he had pleaded guilty of murder and had not been sentenced, and the uncontradicted evidence is that he had received no promises of leniency. His testimony is corroborated to some extent by other evidence and circumstances. According to defendants' own evidence, Simmons went to Frayley's filling station at the time Scott testified he met him there. The length of time necessary to complete the trip and place the dynamite was very much disputed, and the time Simmons was gone was not established with certainty. It is clear that defendants did not leave for the show until an hour and a half after they first arrived at the Shoemakers. Moreover, Scott

did not know the Austins and no reason except the one he gave appears for his taking part in the crime. The jury was warranted in finding Simmons' guilt had been proved beyond a reasonable doubt.

The evidence with respect to Mrs. Austin is that she was very much disturbed over the divorce proceedings between her and her husband, and that she had repeatedly threatened to kill him rather than see him obtain a divorce. Once she threatened to kill him in the very manner actually employed. That is quite significant. No ill feelings existed between Simmons and Austin, and Simmons had no reason of his own to kill him. Further evidence is that Mrs. Austin's car was used and the dynamite was in it when Simmons drove up to Frayley's filling station. It was her suggestion that Simmons leave to get the gasoline. There is also some indication that the entire idea of spending the evening with the Shoemakers was for the purpose of establishing an alibi. They had never done that before. We conclude that the jury was justified in finding from all the evidence and circumstances that Mrs. Austin was a participant in the crime.

Defendants complain that the jury was improperly instructed, but do not refer specifically to any instructions. Only three are abstracted and they correctly state the law applicable to this case. The contention that the jury was permitted to separate and talk to outsiders is not borne out by the record. Defendants urge as error that the audience became demonstrative during the argument of one of defendants' attorneys. It does not appear to have been of a serious nature, for it was not even mentioned by defendants' lawyers or the court at that time. It is not sufficient ground for reversing the judgment.

The judgment is affirmed. *Judgment affirmed.*