THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* RALPH BELL, Defendant-Appellant.

(No. 73-342;

Second District (2nd Division)—April 11, 1975.

172

Ralph Ruebner and Mary McCormick, both of State Appellate Defender's Office, of Elgin, for appellant.

Gerry L. Dondanville, State's Attorney, of Geneva (Clarence Wittenstrom, Jr., Assistant State's Attorney, of counsel), for the People.

Mr. JUSTICE DIXON delivered the opinion of the court:

Defendant, Ralph Bell, was indicted on one count of attempt armed robbery. He was found guilty by a jury in the Kane County Circuit Court and, after the denial of post trial motions was sentenced to 3⅓ to 10 years in the penitentiary. He appeals on the grounds that he was denied a fair trial in that the prosecutor mentioned in his opening statement evidence which was prejudicial to defendant and not brought out at trial, that the court erred in permitting him to be impeached by a prior inconsistent statement absent a proper foundation for the impeaching testimony, that he was not proven guilty beyond a reasonable doubt, and that the sentence imposed violated the Unified Code of Corrections.

Around midnight on October 29, 1971, Jonathan Hanchett, a security guard at Dominick's Food Store in Elgin, was making his rounds outside the store when a person wearing a ski mask and carrying a gun surprised him. Hanchett could not determine the sex of this person. The assailant frisked Hanchett, but made no attempt to take anything from him.

Hanchett could tell the assailant was black because a portion of his face was visible through the ski mask. The assailant wore dark clothing, including a dark indistinguishable jacket, probably waist length. Hanchett testified that he did not see such a coat in the courtroom. Defendant's brother was wearing a long, dark coat in the courtroom, later identified as the coat defendant was wearing at the time of his arrest.

Hanchett got a good look at the gun while the assailant was frisking him; the gun looked tattered and had chipped paint. He testified that a gun and mask similar to those of the assailant were shown to him by a detective about 40 minutes after the incident. Hanchett identified at trial a gun and ski mask shown him by the prosecutor as those used by the assailant.

While the assailant was frisking Hanchett, Duane Richert, a grocery store employee, came around the corner and startled the assailant. The assailant followed the boy around the corner where the boy disappeared.

Richert testified that just before midnight on October 29, 1971, he walked out of the grocery store. He heard a noise and upon investigation saw Hanchett against the wall and a man holding a gun against him. The assailant yelled at Richert to stop, but Richert ran into the building, followed by the assailant. The assailant pointed the gun at Richert and then ran out the door. Richert could not identify the assailant who wore a mask.

William Pasholk was sitting in his parked car in the grocery store park-

ing lot about midnight on October 29, 1971. His testimony coincided with that of Hanchett and Richert. When the assailant pointed the gun at Richert, Pasholk ducked his head. He heard three clicks. His car engine was running at the time and possibly only the one window on the driver's side was down. Pasholk could not tell the sex of the assailant, but the assailant was wearing a ski mask and dark clothing. There was nothing distinguishing about the assailant's coat.

Allen Piske, an Elgin detective, went to Dominick's Food Store in his car on October 29, 1971, after getting a call concerning an armed robbery there. He met other police cars there and he searched the area to the south of the store as the assailant had fled south on foot.

Piske and an Officer Shroeder went in separate cars to 464 Hickory St., because a blue station wagon was seen pulling into a driveway. They saw the car there and upon Piske shining his flashlight into the car, defendant, whom Piske knew, raised his head. Defendant got out of the car and said it belonged to a "Dale" who drove him there but whose last name he did not know. A sticker on the car indicated to Piske that defendant's mother owned the car.

Piske then flashed his light into the back seat of the car and saw a suitcase with knit material protruding. Upon opening the suitcase Piske found among other things, a gun and ski mask which he identified at trial. Defendant was wearing a long, dark coat at that time, which Piske identified at trial.

Piske took the mask and gun to the scene and showed them to witnesses. Defendant's fingerprints were not on the gun or the make-up kit found in the suitcase. Piske test-fired the gun and it misfired about 10 times in 11.

Officer Shroeder traveled down Hickory St., after receiving a call concerning the incident, and saw a blue Pontiac pull into the driveway at 464 Hickory St. A few minutes later he returned to 464 Hickory St., in response to a radio message. The blue station wagon was still there. Schroeder met Piske there and did not recall any conversation he or Piske had with defendant when he was arrested.

Officers Heine and Lawrence returned to the scene of the offense after they received the gun found in the car with defendant. Heine remained in the car, parked where Pasholk's car had been parked, and left the engine running and windows closed. Lawrence test-fired the gun where he was told the assailant had tried to shoot at Richert. Heine heard three clicks.

Robert Merrill, an evidence technician, testified that he obtained possession of the gun, mask and other items from Piske and placed them in

an evidence vault to which he had the sole key. Merrill gave them to Piske when the trial began.

Defendant testified that at 11:30 P.M. on October 29, 1971, he had walked 4½ blocks to the house of a lady known to him only as "Louise," on Hickory St. He drank a few beers there with others. He was feeling high around midnight and left. Joe Harper, a friend, was pulling into the driveway with defendant's mother's car. Defendant asked for a ride and was told to wait in the car.

Defendant said he laid down in the car and the police came and flashed a light on him. He told the police he had been drinking and was waiting for a ride. He denied that any policeman asked him who owned the car.

Defendant denied every aspect of the charge and said he had not gone to Dominick's that night. On cross-examination, defendant admitted that he had had a conversation with Officer Smith at the Tower Grill concerning an offense with which his brother was charged.

On rebuttal, Officer Smith, testified to that conversation, saying that defendant told him that he (defendant) was being blamed by his family for his brother's crime. Defendant denied committing the crime his brother was involved in, but admitted the offense at Dominick's. This conversation lasted for 30 minutes, most of the discussion centering around defendant's brother's charge.

The issues on appeal are:

 I. Was defendant denied a fair trial in that the prosecutor commented in his opening statement on evidence material to the prosecution which was not brought out at trial and which was prejudicial to defendant?

 II. Did the trial court commit reversible error by permitting defendant to be impeached by a prior inconsistent statement without requiring a proper foundation to be laid for the testimony of the witness?

 III. Did the prosecution fail to prove defendant guilty beyond a reasonable doubt?

 IV. Was the sentence imposed on defendant in violation of the Unified Code of Corrections?

I. In his opening statement, the prosecutor told the jury that a blue station wagon was seen leaving the area of the instant offense. There was no testimony to this effect adduced at trial. Defendant argues that this is reversible error because any indication that a blue station wagon was seen leaving the scene of the crime substantially damaged his alibi. However, defendant is making this objection to the prosecutor's opening statement for the first time on appeal.

Defense counsel had the entire file of the prosecution on the instant case well before trial. Thus, when the prosecutor made the above-mentioned statement, the defense knew that the prosecution had no specific evidence on that point and should have objected at that time. Perhaps defense counsel decided not to object as a matter of trial strategy, possibly reasoning that the prosecution's case would be weakened when the jury was shown that the prosecution could not prove this one aspect of the crime.

In any event, there is no indication of bad faith on the part of the prosecution in making this statement. The good faith of the prosecutor in making his opening statement is to be considered in looking at improper remarks contained in the statement. (*People v. Rogers*, 303 Ill. 578.) The remark made by the prosecutor in *Rogers* was much more serious than the remark made here (a reference to a subsequently excluded confession). Also, "* * * reversal is not warranted unless it appears that the improper remarks complained of influenced the jury in a manner that resulted in substantial prejudice to the accused." (*People v. Stahl*, 26 Ill.2d 403, 406.) In light of the other evidence against the defendant, we cannot say that the remarks regarding a blue station wagon being seen leaving the area of the instant offense substantially prejudiced defendant.

Defendant argues that he did object to the prosecutor's opening statement in his motion for a new trial. However, looking at the objection by itself ("That the prosecutor's opening and closing arguments were prejudicial and inflammatory"), it is clearly insufficient. An objection must be specific, giving notice of what in particular is objected to and the reasons for the objection; otherwise, the right to object is generally waived and the error cured. (*People v. Trefonas*, 9 Ill.2d 92.) Taking the objection together with defense counsel's argument in support of the objection, it is clear from the record that the defense was not objecting to the statement concerning the blue station wagon, but rather a statement made that defendant was known to Officer Piske.

In addition, there was an instruction given that anything said in the opening statement which was not based on the evidence was to be disregarded. Also, defense counsel told the jury that opening statements were not to be considered as evidence. Defendant cites two cases on the proposition of improper statements by a prosecutor depriving a defendant of a fair trial. (*People v. Allen*, 17 Ill.2d 55; *People v. Weller*, 123 Ill.App.2d 421.) Both cases involved far more egregious situations than the one at hand, and *Allen* affirmed a conviction despite the improper statements because of positive evidence of guilt.

II. At trial, defense counsel objected to the rebuttal testimony

of Sergeant Smith of the Elgin Police. Sergeant Smith testified that he had met defendant at a restaurant, where defendant admitted the instant offense. Defendant objected that a proper foundation had not been laid for this testimony of Sergeant Smith. On cross-examination, defendant had denied discussing the instant case with Sergeant Smith. Defendant argues that this is insufficient foundation for the admission of the prior inconsistent statement here involved, and contends that he also had to be asked whether he had admitted to Sergeant Smith that he had committed the instant offense. We do not agree. When an admission is offered in evidence against a party to the action, it is not necessary to lay a foundation for its introduction by asking him whether or not he made the statement. (*Ryan v. McEvoy,* 20 Ill.App.3d 562; McCormick, Evidence § 37, at 74 (2d ed. 1972); Gard, Illinois Evidence Manual, Rule 484 (1963).) Defendant here was asked if he had talked with Sergeant Smith at the restaurant about the instant offense, and he denied it. Having made such a denial, there was no reason for defendant to be asked if he had admitted the instant offense to Sergeant Smith at the restaurant. It is logically untenable for defendant to deny having conversed about the instant offense and also argue that he had to be asked if he had admitted the offense in that "nonexistent" conversation. The second question would be mere redundancy. Defendant was not surprised here, nor was he denied an opportunity to explain his prior statement.

■■■ Defendant argues that the rebuttal testimony of Sergeant Smith went only to the issue of defendant's credibility and was not to be considered as substantive evidence of the offense charged. He alleges error in that no instruction was given to the jury as to the limited use of this rebuttal testimony. Defendant failed to tender a limiting instruction. "No party may raise on appeal the failure to give an instruction unless he shall have tendered it." (Ill. Rev. Stat. 1973, ch. 110A, par. 366(b)(2)(i).) The supreme court has indicated the ongoing validity of this requirement that counsel must tender an instruction in order to raise its absence on appeal. The court is under no duty to give instructions not requested by counsel. (*People v. Springs,* 51 Ill.2d 418; *People v. Barber,* 20 Ill.App.3d 977.) Certain fundamental instructions must be given in all cases even if such instructions are not tendered by counsel (*People v. French,* 5 Ill. App.3d 908; *People v. Castro,* 1 Ill.App.3d 537), but a review of the relevant cases indicates that the instruction involved here was not of such a fundamental nature. See *People v. Doss,* 26 Ill.App.3d 1.

■■ III. Defendant argues that he was not found guilty beyond a reasonable doubt because of the weakness of the circumstantial case against him. A conviction will be set aside where the evidence is so unsatisfactory as to raise a reasonable doubt as to the guilt of the defendant,

but the factual determination of the trier of fact is given great weight. (*People v. Patterson*, 52 Ill.2d 421.) The appellate court will not substitute its judgment for that of the fact finder below unless the proof is so implausible or unsatisfactory as to justify a reasonable doubt as to the defendant's guilt. (*People v. Woods*, 26 Ill.2d 582; *People v. Brown*, 6 Ill.App.3d 500.). This applies to a case involving circumstantial evidence when it satisfies the jury of the defendant's guilt, as well as one with direct evidence. (*People v. Robinson*, 14 Ill.2d 325.) The law is succinctly stated in *People v. Lenker*, 6 Ill.App.3d 335, 340:

"Circumstantial evidence is legal evidence and a conviction based upon circumstantial evidence may be sustained just as if the conviction were based upon direct evidence. [Citations.] To support a conviction upon circumstantial evidence, it is only necessary that the proof of circumstances be of such a conclusive nature and tendency as to lead, on the whole, to a satisfactory conclusion and to produce a reasonable and moral certainty that the accused and no one else committed the crime. [Citations.] The jury need not be satisfied beyond a reasonable doubt as to each link in the chain of circumstances relied upon to establish guilt, but it is sufficient if all the evidence taken together satisfies the jury beoynd a reasonable doubt of the accused's guilt. [Citations.]

Where circumstantial evidence is so strong and convincing in character as to satisfy the jury of the guilt of an accused beyond a reasonable doubt, its verdict must be sustained [citation], and it is only where a conviction rests upon circumstantial evidence that raises little more than a suspicion against an accused and leaves a grave doubt of guilt, that a court of review is justified in disturbing a jury's verdict. [Citation.]

The prosecution presented a strong circumstantial case against defendant. Within approximately 10 minutes after the instant offense defendant was found lying down in a car a few blocks from the scene of the crime. Also in the car were the gun and mask identified as used by the assailant. Detective Piske testified that defendant told him that he had gotten a ride to this place where he was discovered with "Dale." "Dale" had pulled into the driveway, left the car and walked down the street. When asked, defendant said he did not know who "Dale" was. When asked, defendant said he did not know who the car belonged to, although it was subsequently found to belong to defendant's mother.

The coat defendant was found wearing did not match the description of the coat worn by the assailant, except as to color. This is readily understood when one realizes that the security guard was pushed against a wall with his back to the assailant, that the other store employee ran into

the building when he saw the assailant and that the man in the parked car ducked when he saw the assailant. Also, the guard said he simply was not sure about the coat worn by the assailant and the man in the parked car said there was nothing distinguishable about it.

Defendant contradicted much of the prosecution evidence. He also presented an alibi which was uncorroborated and unlikely.

■■ Defendant was impeached by a prior inconsistent statement and by proof of prior convictions for burglary and theft. A question of credibility was raised, and the jury elected to disbelieve defendant. There was sufficient evidence on which to base a finding of guilty beyond a reasonable doubt.

IV. Defendant lastly argues that attempted armed robbery was to be sentenced as a Class 4 felony on March 12, 1973, the date of his sentence. He has filed a motion for summary reduction of sentence which was ordered taken with the case and which we deny. The argument advanced was based on *People v. Scott*, 14 Ill.App.3d 211, which case was reversed by the supreme court in *People v. Scott*, 57 Ill.2d 353, 312 N.E.2d 596, 599. The offense of attempted armed robbery was treated as a Class 3 felony for sentencing purposes prior to an amendment effective October 1, 1973, which now treats it as a Class 2 felony for sentencing purposes. *People ex rel. Weaver v. Longo*, 57 Ill.2d 67, 69, 309 N.E.2d 581, 583.

For the foregoing reasons, the judgment of the Circuit Court of Kane County is affirmed.

Affirmed.

RECHENMACHER, P. J., and T. MORAN, J., concur.