THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* FRANCIS L. SHERIDAN, Defendant-Appellant.

Fourth District   No. 13881

Opinion filed August 29, 1977.

Irving M. Wiseman, of Wiseman, Shaikewitz, McGivern & Wahl, of Alton, for appellant.

Lee Plummer, State's Attorney, of Jerseyville (Robert C. Perry and Jane F. Bularzik, both of Illinois State's Attorneys Association, of counsel), for the People.

Mr. JUSTICE LEWIS delivered the opinion of the court:

Defendant was convicted by a jury of murder and sentenced to 70 to 210 years' imprisonment. His appeal was timely.

Before discussing defendant's contentions on appeal, the court must dispose of a preliminary matter. The record on appeal contains a volume

III which consists of the circuit court minutes showing that on August 24, 1976, more than four months after defendant's notice of appeal herein was filed, a murder indictment was dismissed against Robert Cash, an accomplice of defendant who testified at defendant's trial for the State. The apparent reason for the minutes' insertion in the record by defendant is to argue that Cash's testimony was part of a deal with the State. The State has moved to strike volume III; this court ordered the motion taken with the case.

■■ Here, the matter brought before this court occurred months after the trial and defendant's notice of appeal. Although Cash and Sheridan had been charged in the same indictment, the cases had been severed before Sheridan's trial. The inclusion of volume III was improper; matters not properly part of the record cannot be considered by this court, even though they are included in the record. (*Iczek v. Iczek* (1963), 42 Ill. App. 2d 241, 191 N.E.2d 648.) The State's motion to strike is allowed. This determination, of course, does not bar defendant's use of this evidence in a post-conviction proceeding if he so desires.

The defendant sets up several issues he considers error; therefore, a review of the trial testimony is necessary. The bound and gagged corpse of 90-year-old Edward Zimmerman was found on April 7, 1975. Bryan Outhouse, age 18, testified that he had known Francis Sheridan for four years and that the two owned a 1971 Camaro. On April 2, 1975, defendant Outhouse, Robert Cash, and David Fulks were in the car when defendant told Outhouse to drive to Edward Zimmerman's house where defendant was going to rob Zimmerman. Outhouse returned with the car to a designated pickup point, but did not see defendant until later, at a restaurant. Sheridan was mad at Outhouse and proceeded to take Outhouse home, but not before Sheridan had told Outhouse he had gotten money out of Zimmerman's safe and that Fulks and Zimmerman had a struggle. Outhouse admitted he had not been charged in the case and that he and his lawyer were told there would be no charges if Outhouse cooperated in Sheridan's prosecution.

Robert Cash, age 33, testified that everyone but Outhouse got out of the car and went to Zimmerman's house. Fulks went in first, followed by Sheridan, and Cash followed later. Cash never saw Zimmerman. Sheridan gave Cash a bag of coins. Cash received $25 from the robbery. Sheridan later said $112 was the total taken. Cash had been charged with the instant murder. Cash testified no promises had been made by the State, but he has asked that any murder sentence be concurrent to any for robbery and that he be put in a different penitentiary than Sheridan. Cash is an alcoholic and takes nerve pills under prescription.

David Fulks, age 26, testified that he pleaded guilty to the murder of Zimmerman. He and Sheridan had been planning the robbery for

months. Once in Zimmerman's house, Fulks put a knife to Zimmerman's throat, and when the old man did not give them the combination to Zimmerman's safe, Sheridan beat him and hit him with a blackjack. After the combination was obtained, Fulks and Sheridan bound and gagged Zimmerman, who still struggled. Zimmerman died due to suffocation. The two tried to return by asking for a ride at a house, which was refused. The phones, in addition, were not working. Fulks admitted that when first questioned about the incident, he exculpated himself. Fulks plea bargained that his murder sentence would be concurrent with a 2 to 8 year robbery sentence.

A jail inmate testified to overhearing Cash say he was going to "pin it on Sheridan." Defendant's mother testified that her son lived with her since 1970 and was home on April 1 and 2, 1975. Defendant testified, denying being in the car that night and denying involvement in the crime. Several other jail residents testified concerning the jailbreak and conversations with Cash and Sheridan.

There are a number of contentions raised by the defendant in this appeal. The first issue raised by the defendant is that he was not proven guilty beyond a reasonable doubt. This argument is based upon an attack of the three accomplice witnesses who each named defendant as instigator and participant in the crime. This attack really goes to promises of leniency and not to credibility. It has always been the rule in Illinois that the uncorroborated testimony of an alleged accomplice is sufficient to warrant conviction. *(People v. Hermens* (1955), 5 Ill. 2d 277, 125 N.E.2d 500.) Accomplice testimony does have its inherent weaknesses, and direct contradiction or material corroboration from other sources are entitled to great weight. All the factors go to the weight and credibility of the witnesses' testimony, matters over which the jury exercises its fact-finding function. The verdict will not be disturbed unless it is plainly apparent that proof beyond a reasonable doubt is lacking. *(People v. Hansen* (1963), 28 Ill. 2d 322, 192 N.E.2d 359.) The fact that the accomplice is a self-confessed criminal and has expectation of leniency does not, of itself, raise a reasonable doubt. *People v. Musgray* (1976), 37 Ill. App. 3d 48, 344 N.E.2d 708.

■■ The defendant has additional problems with his attack on the accomplices since there are three to attack, and there is some corroboration of certain things that happened that night and the physical evidence in connection with the crime. The testimony of the accomplices is similar in almost every detail and is corroborated in part by other testimony. Defendant's arguments concerning the credibility of the accomplices were placed before the jury. All three implicated Sheridan even though they were arrested in separate locations long after the crime was committed. There are no apparent family links, as in *People v. Price*

(1974), 21 Ill. App. 3d 665, 316 N.E.2d 289, to supply a credible motive for a "frame-up." The verdict will not be disturbed under the facts in this case on the question of reasonable doubt.

■■ Defendant next contends that the trial court erred in refusing a defense motion to bar testimony concerning an alleged jail escape attempt by defendant. The first argument advanced is that evidence of an escape is not relevant when defendant is being held on more than one charge since any circumstantial evidence of guilt derived from the fact of the escape attempt is negated where it is possible defendant sought to escape from the second charge. The above position, however, has never been followed in Illinois. Rather, we feel the fact that defendant is being held on more than one charge should only go to the weight of the inference to be drawn from the fact of the escape attempt since the defendant may offer any proof which would explain the circumstances surrounding his escape or escape attempt. (See *People v. Neiman* (1967), 90 Ill. App. 2d 337, 232 N.E.2d 805.) Defendant then argues that the evidence of the escape was not credible. This, however, is a jury question. In this case, the jury was apprised of defendant's contentions regarding the escape and weighed them in its consideration of the case. No error occurred in connection with escape attempt testimony.

■■ Defendant also argues that it was prejudicial error for the court to admit a picture of a defense witness' store. Although the picture is not material to the case, defendant's counsel did not object on that ground and is estopped from complaining before this court. The objection at trial was based on the appearance of an ordinarily dressed man in the picture who defense counsel revealed was a local policeman. The trial court directed the jury to disregard the man in the picture. Therefore, no prejudicial error resulted from its admission.

■■ Defendant next asserts that prejudicial error resulted from the State being allowed to ask Sheridan the reasons behind his being fired from his job in 1974. However, defendant testified on direct that he was fired. If a line of questioning is opened up on direct examination, defendant cannot complain to further inquiry on cross-examination. (*People v. Clark* (1973), 9 Ill. App. 3d 998, 293 N.E.2d 666; *People v. Petty* (1972), 3 Ill. App. 3d 951, 279 N.E.2d 509.) The latitude allowed during cross is within the court's discretion. (*Clark.*) Here, defendant explained he was fired for talking and arguing, and not violence. The State then went to a different line of questioning. No reversible error occurred.

■■ The next issue raised is whether the trial court erred when it allegedly read the instructions so quickly as to be unintelligible, thus implying the instructions were not important. In *Kinser v. Kruse* (1972), 4 Ill. App. 3d 987, 283 N.E.2d 120, the court found error where the trial judge was twice interrupted by members of the jury complaining about

the intelligibility of the instructions. After one complaint, the judge responded to the effect that his presentation was directed mostly to the court reporter. In addition, the jury did not take the instructions to the jury room. Here, however, the court was not interrupted with any complaints, and the jury took the instructions to the jury room. In addition, both parties and the court had earlier mentioned the importance of the instructions. We also note the defense counsel did not point out the problem, if one existed, during the reading of the instructions. He should have done so and could have done so without prejudicing his client through a side-bar conference. No error occurred.

■■ Finally, defendant contends that certain conduct of a sheriff during the trial was so prejudicial as to warrant a new trial. Defendant's mother alleges, in an affidavit attached to an addition to Sheridan's post-trial motion, that during Sheridan's testimony, Sheriff Yocum would shake his head, laugh and also smiled at the jury. Defendant and his counsel denied any knowledge of the incident until after the trial. A review of the trial record shows no comment by the court or the State's Attorney on the alleged behavior. While, if true, such conduct by a public official is not to be condoned and would require at least prompt remedial action by the court to ascertain the prejudicial effect of the conduct, Sheridan's failure to raise the point during the trial casts a shadow across the seriousness of any conduct that did occur. (See *People v. Austin* (1940), 374 Ill. 28, 27 N.E.2d 830.) No error was proven. The question concerning the sheriff's conduct and the reading of the instructions rapidly are matters that are beyond the record; and to preserve such error, some mention of it need be made at the time of its occurrence. It requires immediate action so that it may be dealt with properly.

Defendant's conviction is affirmed.

Affirmed.

GREEN, P. J., and TRAPP, J., concur.