THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* FRANCIS L. SHERIDAN, Defendant-Appellant.

Fifth District   No. 76-457

Opinion filed February 17, 1978.

Irving M. Wiseman, of Wiseman, Shaikewitz, McGivern and Wahl, of Alton, for appellant.

Nicholas G. Byron, State's Attorney, of Edwardsville (Bruce D. Irish and Keith P. Vanden Dooren, both of Illinois State's Attorneys Association, of counsel), for the People.

Mr. JUSTICE KARNS delivered the opinion of the court:

Defendant appeals his conviction for armed robbery following a jury trial in the Circuit Court of Madison County. He was sentenced to a term of 20 to 40 years. He assigns as reversible error the following: the refusal of the trial court to appoint counsel to represent defendant, thus forcing defendant to appear *pro se*; the denial of a continuance to retain counsel; the acquiescence of the State in the perjured testimony of one Bryan Outhouse; the characterization of defendant as a professional criminal in the State's opening statement; the prosecutor's expression of his personal opinion, not based on the evidence, of defendant's guilt and argument based on testimony which had been stricken; and that the evidence was not sufficient to establish defendant's guilt beyond a reasonable doubt. We have taken with the case the State's motion to strike that part of defendant's brief relating to the testimony of Bryan Outhouse which is part of the record in another case.

The evidence which was presented at trial is as follows: On April 11, 1975, the victim of the robbery, Roy Schneider, holding a hand gun, answered a knock on his front door and admitted into his house a man, later identified as Robert Cash, who stated that he had experienced car trouble and requested the use of Schneider's telephone. Almost immediately thereafter, a man armed with a gun, his features hidden by a ski mask, but later identified as David Fulks, entered the front door, told Schneider to drop the gun he was holding and lie on the floor. Schneider did so, received two blows on the head which rendered him unconscious, and was robbed of approximately $250, two silver dollars, his wallet, his .38 Rohm revolver, and his Chevelle automobile. When Schneider recovered consciousness, he freed his feet which had been tied, discovered the missing items and that the back door had been broken open.

Meanwhile, Lawrence Stivers, a security guard at Civic Memorial Airport, noticed a gold Camaro automobile pull into the airport parking lot at approximately 8 p.m. and remain there for almost two hours. It was subsequently discovered that defendant was the owner of this car. Later that evening Stivers saw a car pull off Highway 111 adjacent to the airport and flash its lights on and off. These events were reported to the Bethalto police. Shortly thereafter the three persons walking from the car parked off Highway 111, which was Schneider's car, were stopped by two policemen who had responded to Stiver's call. Upon learning of the robbery, the subjects were arrested. The three occupants were Cash, Fulks, and the defendant, Francis Sheridan. Upon their persons were found currency, two silver dollars, a ski mask, a blackjack, and a .38 Rohm revolver. Of these items, $259 in bills, two silver dollars, six .38

special cartridges, a brown ski mask, and the blackjack were found on the person of the defendant.

Schneider was immediately brought to the scene where he identified his car, recognized defendant, whom he knew, identified Cash as the "motorist" he had allowed into his home, and identified Fulks, by his voice, as the man in the ski mask. Subsequently, Cash, Fulks, Sheridan and Bryan Outhouse, the driver of the gold Camaro, were indicted for armed robbery.

Bryan Outhouse testified that he, David Fulks, Robert Cash, and Francis Sheridan had met that evening at a pool hall near Nita's Cafe, from which they all left in the Camaro. As they drove, Sheridan outlined a plan by which Cash would knock on the door of a house and say he had a flat tire, then Fulks and Sheridan were to run in. Outhouse further testified that Sheridan directed him to drop them off and then to drive to the airport and wait. Sheridan told him they would arrive at the airport in the car of the person they robbed. Outhouse drove to the airport in the defendant's Camaro and waited there from about 8 until 9:30 when he was arrested.

Defendant's version of these events differs markedly. He testified that at 8:30 that evening he was in Nita's Cafe with Janet Blackstone when Bryan Outhouse came in and asked to borrow his car, the Camaro. Approximately one-half hour later, Outhouse returned and accompanied Sheridan en route to the airport for the purpose of going flying in defendant's plane. As they were driving down Highway 111, they came upon two men walking, Cash and Fulks. At Outhouse's request, defendant picked them up and continued on to the airport. Cash and Fulks then paid defendant to fly them to New Mexico, presumably accounting for the money found on defendant. Upon arriving at the airport, they were apprehended by the policemen. In rebuttal, the State introduced the record of defendant's murder conviction for impeachment purposes.

Defendant's first contention is that it was reversible error for the trial court to refuse appointment of counsel for him, thereby forcing him to defend *pro se* when he had in fact never waived his right to counsel. For the reasons set out below, we disagree.

In order to explain our decision that the trial court properly refused to appoint an attorney for defendant, it is necessary to review the history of defendant's attorneys and fluctuating assets. An indictment was returned on April 17, 1975, charging defendant with armed robbery. On April 18, a written appearance was filed by retained counsel demanding a preliminary hearing and immediate jury trial. Other discovery motions were filed at this time. At arraignment on April 30, 1975, defendant

informed the court he was represented by named counsel, and defendant was admitted to bail on a property bond after representing to the court that he owned four houses, unencumbered, two of which he valued at $35,000 and $18,000. In a sworn affidavit, defendant stated his net worth exceeded $50,000. Numerous motions were subsequently filed by counsel, including discovery motions, motions to suppress and a motion for substitution of judges. Then on June 16, 1975, retained counsel was allowed to withdraw for the stated reason that the defendant had failed to cooperate with counsel.

Two weeks later, another attorney entered his appearance as counsel for defendant. He represented defendant at his first trial on October 7, 1975, which resulted in a mistrial when the jury was unable to reach a verdict. On November 5, defendant's initial attorney, who had withdrawn as counsel, moved that defendant's property be released as security on his bond and that he be surrendered to the custody of the sheriff of Madison County on the instant charge. The reason assigned for this was that defendant had been charged subsequent to indictment in this case with the offense of murder in Jersey County and was incarcerated in the Jersey County jail on that charge. Original counsel, or his law firm, represented Sheridan on the murder charge in Jersey County. This motion was allowed and a mittimus was directed to the sheriff of Jersey County requiring him to surrender defendant to the sheriff of Madison County. Of course, this curious order was never served and, in fact, defendant was tried and convicted on the murder charge in Jersey County prior to the trial of this indictment in Madison County. (See *People v. Sheridan*, 51 Ill. App. 3d 963, 367 N.E.2d 422 (4th Dist. 1977).) While defendant's property was released as security, first retained counsel never entered his appearance as defendant's counsel to defend the instant charge; although, the attorney who represented defendant at the trial resulting in a mistrial, withdrew as counsel on November 26, 1975, as defendant had terminated his employment.

On December 3, 1975, defendant filed *pro se* a motion, prepared by counsel first retained, who had not formally appeared for defendant at this time, requesting the appointment of the public defender to represent defendant, stating he was without assets to hire an attorney. The motion stated that his real estate, which as late as November 26 had been pledged as security on his property bond, and which he represented he owned unencumbered, was mortgaged for $10,000 and was "not worth much more than the mortgage," and that his airplane was subject to a $7,500 mortgage. On the basis of this unverified motion, presented *ex parte*, the court appointed the public defender of Madison County to represent defendant. The order required the public defender to enter his

appearance as counsel for defendant within two days. Thereafter, a petition for a hearing to determine the true indigency of Sheridan was filed.

A hearing was held on January 28, 1976, and defendant was determined not to be indigent, the court later noting that defendant had "ample funds," which the defendant apparently acknowledged, simply explaining that the funds had been borrowed. The case was set for trial on February 17, 1976. On that date, defendant appeared without an attorney and was granted a continuance to March 18, over the objection of the State, to obtain counsel. He did not do so. On April 5, defendant again appeared in court and requested a continuance to obtain counsel and the case was continued for that purpose to May 4. It would appear that defendant never requested the appointment of counsel on the basis of indigency at any time after January 28, until during his trial on May 4.

Following the guilty verdict on May 5, the court set the sentencing hearing for June 11, 1976. On May 7, initial counsel again formally entered his appearance as defendant's counsel and a lengthy post-trial motion was filed on defendant's behalf.

The presentence report listed Sheridan's assets as a four-room house in Wood River, a two-room house in East Alton, a five-room house in Alton, a Skyhawk 172 airplane, an acre of ground near Grafton, a 1971 Camaro, a 1962 Chevrolet, a 1972 Chevrolet and $12,000 in securities in the Illinois State Bank of Alton. His liabilities were listed as a $4,900 debt owed the Illinois State Bank and legal fees in an unstated amount.

■■ The constitutional requirement that counsel be furnished an indigent defendant charged with a crime punishable by imprisonment is codified in Illinois Revised Statutes, ch. 38, par. 113—3(b). For our present purposes the key to this issue is the question of defendant's indigency. Counsel may not be appointed for a nonindigent defendant merely because he desires the appointment. (*People v. Losacano*, 29 Ill. App. 3d 103, 106, 329 N.E.2d 835, 837-38 (3d Dist. 1975).) A defendant who requests appointed counsel is entitled to a hearing to determine whether he is indigent and this defendant had one on January 28, 1976. Thus, defendant's reliance on *People v. Kerner*, 32 Ill. App. 3d 676, 336 N.E.2d 65 (5th Dist. 1975), and *People v. Eickelman*, 32 Ill. App. 3d 665, 336 N.E.2d 61 (5th Dist. 1975), is misplaced because in each of those cases the trial court did not hold an indigency hearing.

Defendant does not assert that the trial court reached the wrong result at the January 28, hearing. Neither does he contend that all defendants, indigent or not, should be entitled to court-appointed counsel. Rather, defendant presents the novel issue whether a defendant who believes that his financial circumstances have changed is entitled to another indigency

hearing. He observes that over three months had passed between the hearing and his trial. We believe this is a somewhat disingenuous argument. Three months passed solely because the trial court allowed defendant continuances to retain counsel. During this three-month period, defendant at no time represented to the court that he was indigent. Insomuch as the trial court is not required to grant defendant unlimited continuances (*People v. Solomon*, 24 Ill. 2d 586, 182 N.E.2d 736 (1962); *People v. Eickelman*, 32 Ill. App. 3d 665, 669, 336 N.E.2d 61, 64 (5th Dist. 1975)), this argument is not persuasive. Thus we cannot say that the trial court's finding that defendant waived his right to counsel was against the manifest weight of the evidence. *People v. Dailey*, 51 Ill. 2d 239, 242, 282 N.E.2d 129, 130 (1972).

■■ The interplay between defendant's pending murder trial in Jersey County and the instant armed robbery charge pending in Madison County is apparent. Counsel on appeal initially represented defendant and the day after defendant was convicted of the instant offense, entered an appearance on his behalf to file post-trial motions. Yet, in spite of defendant's representation by retained counsel on the murder charge in Jersey County and substantial pretrial and post-trial representation by the same counsel in this case, there is no indication that defendant ever requested their representation on the instant charge or that representation was refused defendant, or that defendant tried to retain anyone. A close reading of the record, including defendant's conduct of the trial on his own behalf, suggests that it was defendant's strategy to force the trial court to require him to proceed *pro se* and then complain before the jury, as he did on numerous occasions, that he desired a lawyer and could not defend himself as the court would not appoint one for him; then, if convicted, the deprivation of counsel would furnish him error on appeal. We have set these matters out in some detail to explicate what we consider defendant's strategy, not to suggest any criticism of counsel who appeared at any stage of these proceedings.

We realize that the right to counsel in a criminal prosecution is a fundamental constitutional right (*Gideon v. Wainwright*, 372 U.S. 335, 9 L. Ed. 2d 799, 83 S. Ct. 792 (1963)); however, we must conclude that defendant waived his right to counsel by his conduct and inaction upon full consideration of the unusual circumstances of this case.

Next the defendant asserts that three instances of reversible error occurred because of remarks by the assistant state's attorney in his opening statement and closing argument. Included in the prosecutor's opening statement were the following remarks:

"* * * And I believe the evidence will show that Mr. Sheridan was a customer of Nita's Cafe. Mr. Sheridan was unemployed.

That, Mr. Sheridan had managed to gather around him a crew of gentlemen whose professions and occupations was [*sic*] to divest people like Roy Schneider of their paychecks. * * *"

█ █ █ Opening statements are not grounds for reversal unless it appears that they influenced the jury in a manner resulting in substantial prejudice to the defendant. (*People v. Kristovich*, 32 Ill. App. 3d 979, 983, 336 N.E.2d 772, 776 (2d Dist. 1975); *People v. Bell*, 27 Ill. App. 3d 171, 176, 326 N.E.2d 507, 511 (2d Dist. 1975).) "[T]he prosecutor cannot comment during his opening statement upon what testimony will be introduced at trial and then fail to produce such testimony. Such arguments and comments effectively asserts [*sic*] the prosecutor's own unsworn testimony in lieu of competent evidence." (*People v. Rogers*, 42 Ill. App. 3d 499, 502-03, 356 N.E.2d 413, 416 (3d Dist. 1976).) In this instance the prosecutor attempted to introduce such evidence by a witness whose testimony would be that the defendant and the others charged with this crime were often seen whispering and drawing on napkins in a restaurant. This testimony, however, was ruled inadmissible by the court on its own motion, and properly so as both the remark in opening statement and the proffered testimony suggested that defendant was a "professional" criminal and thus suggested the commission of other crimes. (*People v. Gillarm*, 41 Ill. App. 3d 174, 353 N.E.2d 280 (1st Dist. 1976).) Nevertheless, the good faith of the prosecutor is important in considering possible improper remarks. (*People v. Parks*, 49 Ill. App. 3d 65, 67, 363 N.E.2d 93, 95 (1st Dist. 1977); *People v. Bell*, 27 Ill. App. 3d 171, 176, 326 N.E.2d 507, 511 (2d Dist. 1975).) We hold that the above-quoted remarks, while improper, did not result in substantial prejudice to the defendant.

The defendant also asserts two instances of reversible error in the prosecutor's closing argument. The first of these is the following:

"* * * Now I submit to you that the evidence in this case is clear; that Number One, Francis Sheridan on the night of April the 11th was armed with at least one dangerous weapon; and that is a black jack. I expect, then, the evidence is also clear that Francis Sheridan was at Roy Schneider's house. He participated in the planning of the robbery. This is Francis Sheridan's car. Francis Sheridan is in other words, as befits the leader of this squad of commandos, out praying [*sic*] on Madison County that night. As a general marshalling his troops, Francis Sheridan, had on his possession all of the fruits of that robbery, which he will probably divide up and pay each man according to his value once they reach a haven of safety. Francis Sheridan has the silver dollars. He has the folding money. I think the evidence, in other words, Francis Sheridan is under any concept, I believe, guilty of the act of being

inside the house, being armed at least with this as a dangerous weapon. * * *"

Furthermore, defendant objects to the following passage from the prosecutor's rebuttal argument:

"* * * He mentioned Nita's Cafe and when he was there. And, he remembers—well, you remember what Shirley Rawlings said. Shirley Rawlings said, 'Yeah, Francis Sheridan was at Nita's Cafe around that time and had been there and was there with somebody, Fulks and Robert Cash, whom he had gone to school with. And while they were there, they were making sketches or drawings, a map on the napkins.' She would come over to refill their coffee cups; and, they would cover them up. And, she would never see them.

THE COURT: Those remarks were objected to by the Court and are not to be considered here.

MR. WEBER: All right. I'm sorry, Your Honor.

THE COURT: The jury is instructed to disregard the last remarks made by counsel regarding the waitress at Nita's Cafe. And, you are not to consider the same when retiring to the jury deliberation room. * * *"

■■ It is proper for a prosecutor to argue or express his opinion that the accused is guilty where he states or it is apparent from the record that such opinion is based solely on the evidence. (*People v. Gardner*, 40 Ill. App. 3d 700, 705, 352 N.E.2d 448, 452 (5th Dist. 1976); *People v. Delgado*, 30 Ill. App. 3d 890, 897, 333 N.E.2d 633, 639 (2d Dist. 1975).) With regard to the first line of argument, that defendant was in Schneider's house, we believe that the prosecutor's remarks were legitimate inferences from the evidence. By beginning his remarks "I submit * * *" and referring repeatedly to the evidence, the prosecutor clearly implied to the jury that his conclusions were based on the evidence. *People v. Anthony*, 41 Ill. App. 3d 1025, 1030, 355 N.E.2d 218, 223 (4th Dist. 1976).

Turning to the statements in the prosecutor's rebuttal argument, we find that the line of argument relating to Shirley Rawlings' inadmissible testimony was properly prevented from coming to fruition; we cannot say that we believe the verdict may have been otherwise had the prosecutor not mentioned Rawlings' testimony. *People v. Gillarm*, 41 Ill. App. 3d 174, 177, 353 N.E.2d 280, 283 (1st Dist. 1976).

Next, defendant contends that the evidence was insufficient to prove his guilt beyond a reasonable doubt. In support of his position, he stresses that his conviction was partly based on the testimony of an accomplice witness, Bryan Outhouse. Defendant contends that Outhouse's testimony was unreliable, inasmuch as the witness hoped for leniency for himself. Our supreme court has repeatedly stated the rule which governs this

contention. Representative of these cases is *People v. Hansen*, 28 Ill. 2d 322, 192 N.E.2d 359 (1963), wherein the court said:

"[T]he uncorroborated testimony of an accomplice, if it satisfies the court or jury beyond a reasonable doubt, is sufficient to sustain a conviction of a felony. [Citations.] We have, however, recognized that such testimony is not of the most satisfactory character and that it is attended with serious infirmities, (such as malice toward the accused, promises or hopes of leniency, or the hope of benefits from the prosecution,) which require the utmost caution in relying upon such testimony alone. * * * Such infirmities, in turn, go to the questions of the weight of the evidence and the credibility of the witnesses, * * * and if the jury or trial court is satisfied by the testimony of an accomplice that the defendant is guilty beyond a reasonable doubt, we will not disturb a conviction on review unless it is plainly apparent that such degree of proof is lacking. [Citations.]" 28 Ill. 2d 322, 332-33, 192 N.E.2d 359, 365.

We note that the court gave Illinois Pattern Instruction, Criminal, No. 3.17, which told the jury that an accomplice's testimony is to be viewed with caution.

We believe that the quantum of evidence in this case not only meets this standard but exceeds it. Outhouse's testimony was corroborated by the airport security guard, Lawrence Stivers. Stivers testified that Outhouse and the defendant's Camaro automobile were in the airport parking lot from approximately 8 until 9:30 p.m. and that he also saw a car stop on Highway 111 and flash its headlights. Then he saw defendant, Fulks and Cash walking up the airport entrance road. Defendant testified that he, Cash, Fulks, and Outhouse drove to the airport together in defendant's car for the purpose of flying defendant's plane.

■■■ While it has been observed in such cases that the testimony of an accused is entitled to as much weight as that of an accomplice, it is also the rule that material corroboration of the testimony of either is entitled to great weight. (*People v. Baker*, 16 Ill. 2d 364, 370, 158 N.E.2d 124 (1959); *accord, People v. Mentola*, 47 Ill. 2d 579, 583, 268 N.E.2d 8, 10 (1971); *People v. Walker*, 24 Ill. App. 3d 421, 426, 321 N.E.2d 114, 118 (4th Dist. 1974).) Not only is defendant's version of the events uncorroborated, but according to his story he was driving his own car. Stivers and Outhouse both stated that Outhouse was parked in defendant's car at the airport and defendant arrived, along with Cash and Fulks, in Schneider's car. Furthermore, the arresting officers testified that defendant told them at the time of his arrest that he and his companions had walked from Bethalto or Wood River. When a defendant elects to explain his presence at the scene of an offense, it is incumbent upon him to tell a reasonable

story or be judged by its improbabilities, especially in view of testimony that he told a different story at the time of his arrest. (*People v. Morehead*, 45 Ill. 2d 326, 330, 259 N.E.2d 8, 10 (1970), *cert. denied*, 400 U.S. 945, 27 L. Ed. 2d 251, 91 S. Ct. 251 (1970).) For these reasons, we cannot say that the evidence was insufficient beyond a reasonable doubt to support the conviction.

Finally, defendant asserts that the State knowingly allowed Bryan Outhouse to present perjured testimony at trial. In support of this contention, defendant requested this court to consider the testimony of Outhouse at the trial of defendant on another charge in Jersey County. The State's motion to strike this portion of defendant's brief, which was taken with the case, is denied.

In the Jersey County trial Outhouse testified for the State in return for promises of leniency for himself. (*People v. Sheridan*, 51 Ill. App. 3d 963, 367 N.E.2d 422 (4th Dist. 1977).) In the instant case, Outhouse testified that he had received no such promise from the prosecution in return for his testimony. Defendant asserts that as of the time his brief was filed, Outhouse had not been tried for this armed robbery.

■ We find this contention wholly without merit. Although it is the duty of a prosecutor to correct testimony which he knows to be false, *Napue v. Illinois*, 360 U.S. 264, 3 L. Ed. 2d 1217, 79 S. Ct. 1173 (1959), the mere fact that charges against a State witness were reduced or dropped after trial does not raise an inference of prior favorable consideration. *People v. Bassett*, 56 Ill. 2d 285, 294, 307 N.E.2d 359, 364 (1974); *People v. Harris*, 55 Ill. 2d 15, 17, 302 N.E.2d 1, 2-3 (1973); *People v. Sulton*, 130 Ill. App. 2d 1098, 1102, 266 N.E.2d 351, 355 (1st Dist. 1970).

For all of the foregoing reasons, the judgment of the Circuit Court of Madison County is affirmed.

JONES and G. J. MORAN, JJ., concur.