THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* EDDIE LIGON *et al.,* Defendants-Appellants.

(No. 57907;

First District (5th Division)—November 2, 1973.

Paul Bradley, Deputy Defender, of Chicago, (Robert E. Davison and Kenneth L. Gillis, Assistant Appellate Defenders, of counsel,) for appellant.

Bernard Carey, State's Attorney, of Chicago, (James S. Veldman and Douglas Cannon, Assistant State's Attorneys, of counsel,) for the People.

. Mr. JUSTICE ENGLISH delivered the opinion of the court:

Defendants were indicted on two counts of murder for the killing of Gilbert Burns, and on two counts of aggravated battery for the shooting of Robert Burns, his brother, on August 13, 1971, in violation of Ill. Rev. Stat. 1971, ch. 38, pars. 9—1, 12—4(a), and 12—4(b) (1). After a jury trial, Ligon was found guilty of murder and was sentenced to a term of 20 to 40 years, and guilty of aggravated battery with a concurrent sentence of seven to ten years. Hooks was found guilty of aggravated battery and was sentenced to a term of seven to ten years.

In their briefs, defendants Ligon and Hooks contend: (1) the trial court should have granted defendants' motion to bar the use of Ligon's prior robbery conviction; (2) the court erred in admitting evidence of Ligon's escape from custody; (3) hearsay testimony concerning an armed robbery committed by Willie Hawkins was irrelevant, incompetent and highly prejudicial; (4) the prosecutor made prejudicial comments in closing argument.

EVIDENCE

*Robert Burns,* for the State:

The deceased, Gilbert Burns, was his 24-year-old brother. On August 13, 1971, he and his brother were at the home of Jacqueline Howell, Robert's girl friend, along with her parents and some of her sisters, when Gilbert left the apartment to get some cigarettes. Ten or 15 minutes later, one of his girl friend's sisters came in saying some boys on the corner were giving Gilbert a rough time. Robert left the building and saw his brother surrounded by six or seven boys, among them John Miller (a co-defendant), Willie Caldwell, and the defendants Hooks and Ligon. Robert asked Miller what was the problem and was told, "This guy is giving me a hassle." Robert and Gilbert started to walk away when Miller hit Gilbert with his fist; "some other guy" was also hitting Gilbert, and Robert grabbed Miller. Hooks then hit Robert in the jaw and he fell against the wall. Hooks, Ligon and a man named Hawkins pulled guns. Hooks shot Robert in the knee and the arm. Miller snatched the gun from Hooks, gave instructions to kill Gilbert, and shot Gilbert in the chest. Gilbert fell to his knees and Miller shot again. Robert grabbed Gilbert under one arm and Jacqueline Howell had Gilbert under his other arm and they were running with him into the house when Robert was shot in the back. Hooks pulled another gun which he had in a paper bag. Robert turned and saw Hooks, Ligon and Hawkins shooting and Miller just standing there with a gun, not shooting. Hawkins was also known as Little Gun

or Big Gun. Hooks, Ligon and Hawkins were shooting at him, his brother and Jacqueline as they were running.

*Jacqueline Howell,* for the State:

On August 13, 1971, when she left her mother's house about 10:00 P.M. with Robert Burns, she saw Gilbert surrounded by some boys, among whom were Johnnie Miller and Edward Hooks. Hooks pulled out a gun. She ran, but turned to see Hooks, Miller, Ligon and others. She saw Miller grab the gun from Hooks and start shooting Gilbert, who was falling to the ground. She saw Hooks firing in the same direction when Miller was shooting. She ran down the steps to help Robert bring Gilbert into the house. She did not actually see Robert get shot or see anyone fire a shot at him.

*Charlotte Howell,* for the State:

She is Jacqueline's sister. She was coming home from the store with her sister, Janie, when she saw Hooks, who pulled out a paper bag and gave it to Janie, who handed it back to him. She saw there was a gun in the bag. She met Gilbert Burns coming down the stairs and told him not to go out there because of "some boys coming down the street with guns." They ran in the house and spoke with Robert Burns and told him to get Gilbert because of the boys coming down the street with guns. Robert and Jacqueline left the house and she came behind them and saw Miller, Caldwell, Hooks and Ligon. Five boys jumped Gilbert and Robert; Hooks pulled the paper bag out and pulled a gun out of the bag and started shooting. Ligon and Miller were also shooting. Miller shot Gilbert in the back of the head, which made him fall down. Robert and Jacqueline picked Gilbert up off the ground and kept trying to take him to the house, and the boys kept shooting. When Robert came in, he was bleeding from the arm. She was going to the police station, but saw an unmarked police car, rode in it, and saw Caldwell and Miller, whom she pointed out to the police, who arrested them.

*Janie Howell,* for the State:

She was with her sister, Charlotte, about 9:30 P.M. when she met Hooks, who handed her a paper bag, but when she found out what was in the bag, she handed it back to him. She knew it was a gun because Hooks handed it to her by the handle and she took it by the handle. She met Gilbert Burns on his way out the door and told him, "Don't go out the door because some boys was coming down the street with guns." She heard gunshots but did not see the actual shooting.

*Denis Gray,* a Chicago police officer, for the State:

He arrested Miller and Caldwell on August 13, 1971, about 10:00 P.M. when Charlotte Howell pointed them out.

*Steven San Filippo,* a Chicago police officer, for the State:

He described his response to a call of a man shot at 1906 South Central Park on August 22, 1971. He proceeded to that address and observed a 1971 Pontiac parked at the curb with both doors open and a body lying on the front seat. Without any objection by the defense, he further testified that a Walter Williams told him he was the victim of a robbery; that two male Negroes entered his restaurant, robbed him, took money from the register and car keys to the Pontiac parked out front from Williams' aunt. Williams took a shotgun, which he kept in the back of his shop, and shot and killed Walter Hawkins, who was the dead man in the front seat. The witness removed a bag from the automobile. It contained the money taken from the restaurant and People's Exhibit 4, identified by him in court as a .22-caliber H & S model gun. He marked his initials on the gun and turned it over to the Police Crime Laboratory.

*Joseph Celovsky,* a Chicago police sergeant, for the State:

He is a firearms expert. Exhibit B, a pellet removed from Robert Burns, was fired from the .22-caliber weapon marked Exhibit 4. Other bullets shown to him could not be identified with the gun due to multilation.

*Kevin Reynolds,* for the State, over defense objection:

On November 11, 1971, when he was 17 years old, he was at Court Branch 43 in the lock-up, charged with jumping over a CTA turnstile, when Ligon had asked him for his "charge papers." He refused, but Ligon took them and when he asked for them back, Ligon said, "No" and hit him in the jaw. When the sheriff came out and called his name to go before the judge, Ligon went out instead. The witness did not go out because some other boys were holding him back. He identified defendant Ligon as the one who had taken his charge papers. He was later charged with aiding the escape of Ligon, but about a month later he was found not guilty.

*Michael Diggs,* a patrolman of the Cook County Sheriff's Police, for the State:

His duty is to arrest individuals wanted on indictment warrants by the County of Cook. On November 20, 1971, he was investigating an escape from Branch 43 on November 11, 1971, and arrested Eddie Ligon (whom he identified in court) at Roosevelt and Indiana Avenue in an alley. He made the arrest under an indictment warrant for murder in the instant case, and for escape.

*Jerry Kearns,* a Coroner's pathologist, for the State:

He examined the body of Gilbert Burns in August of 1971 and found him to be age 25, weight 132 pounds, height five feet eight inches. The body had six bullet wounds, two in the chest on the left side, one of which penetrated the lung and one of which penetrated the heart; one bullet through the left arm; one bullet in the left leg; one bullet in the

right leg and left arm, the sixth bullet in the back of the head at the level of the prominence of the skull. The cause of death was the result of a bullet wound in the heart.

It was stipulated that between 1:00 A.M. and 2:30 P.M. on August 14, 1971, Robert Burns was treated at the Cook County General Hospital and at Garfield Park Hospital for three gunshot wounds.

*Claude William Baston*, for the defendants:

On August 13, 1971, about 10:00 in the evening, he was coming down Independence Boulevard and saw a big crowd. He recognized Johnnie Miller because he had seen him earlier that day; he was wearing a bright yellow T-shirt. He was about 60 feet away when a boy he did know, dressed all in black, jumped out and started shooting toward the wall. The witness turned around and ran, and, while doing so, heard quite a few more shots. He did not see Edward Hooks anywhere in that crowd, nor Eddie Ligon, both of whom he knew (and identified in court). Everybody's back was turned toward him. On cross-examination, he testified that at the time he came on the scene, the boy in the yellow shirt, Miller, and a bigger boy had his arm around a smaller boy's neck and had him up against the wall.

*James Griffin*, a Chicago police investigator, in rebuttal for the State:

On December 13, 1971, he was in the back room of the courtroom with Assistant State's Attorney Patrick McNally and Claude Baston (a previous defense witness), when McNally asked Baston questions relating to the case. Baston stated that he was nowhere around the scene of the shooting on August 13, 1971, and he didn't know anything about the case. On cross-examination, he said that during his investigation, witnesses had told him that Baston was at the scene.

After the jury was instructed and had retired, an objection and a motion for mistrial was made by counsel for Hooks on the ground that the State's Attorney had mentioned to the jury that defendant Hooks had "gotten off" of the murder charge on a technicality. (Hooks had been discharged as to the murder count on the basis of the 120-day statute. Ill. Rev. Stat. 1971, ch. 38, par. 103—5.) The judge said that he had sustained the objection because the facts pertaining to Hooks' release on that charge were not in evidence, but that he actually thought the remark was "a fair comment" after the defendant's attorney had first raised the issue in argument. (See *People v. McMurray*, 6 Ill.App.3d 129, 135, 285 N.E.2d 242.) The trial judge also questioned the ethical position of Hooks' counsel under the circumstances.

■■ Contrary to statements by the defendant in his brief, the record shows that the trial judge here gave careful consideration in exercising his discretion to deny defendant's pre-trial motion, based on *People. v.*

*Montgomery* (1971), 47 Ill.2d 510, 268 N.E.2d 695, to bar the use in evidence of Ligon's prior robbery conviction less than three years before. The defendant in *Montgomery* had been convicted 21 years before the date of the trial of a robbery committed when he was 18 years of age. The Supreme Court held that the trial judge had discretion in admitting this kind of evidence and suggested various factors that might be considered in determining whether the probative relevance of the prior conviction to the issue of credibility outweighed the prejudicial effect to the defendant. Following *Montgomery*, it has recently been held that the trial court did not abuse its discretion in allowing the State to introduce into evidence for the purpose of impeachment defendant's prior conviction for a robbery which had occurred less than four years prior to trial. (*People v. Bradley* (1971), 3 Ill.App.3d 101, 105, 278 N.E.2d 243.) The trial judge here was, likewise, correct.

Ligon did not testify, and the record of his prior conviction was not offered into evidence.

Defendant next argues that while it is reasonable to admit evidence of flight or escape (as consciousness of guilt) when the defendant is in custody under one charge only, it is not reasonable to admit evidence of escape when defendant is in custody on account of more than one offense, since it cannot be assumed whence defendant's consciousness of guilt stems. This precise issue has recently been before the Supreme Court, but the court did not rule on the issue because the facts before it did not present the question. (*People v. Harris* (1972), 52 Ill.2d 558, 561, 288 N.E.2d 385.) The court did, however, rule that the flight of the defendant in the *Harris* case was admissible, commenting that there was no "evidence to show that defendant attempted to flee for any reason other than consciousness of guilt of the offense of which he was convicted." Nor did the defense offer any such evidence in the instant case. There is nothing in evidence to show how defendant Ligon happened to be in Court Branch 43 on November 11, 1971, but we will take notice of the fact that Branch 43 is designated "Boys Court" and any charge processed through that branch would be lesser in degree than the instant murder charge that was then pending against him. In the absence of any defense explanation, we therefore find it reasonable to conclude that his escape and flight under those circumstances were related to the murder charge rather than whatever other unknown (to this record) charge might have been pending against him, and that the evidence thereof was properly admitted to be considered by the jury in connection with all the other facts and circumstances in evidence as tending to prove guilt. See *People v. Neiman*, 90 Ill.App.2d 337, 342-346, 232 N.E.2d 805, and *People v. Curtis*, 7 Ill.App.3d 520, 525-526, 288 N.E.2d 35.

■■ Defendants contend that officer San Filippo's testimony should have been excluded. We note that the Assistant Public Defender began his opening statement to the jury by saying that Willie Hawkins was the one "who in fact is responsible for the death of Gilbert Burns." When Officer San Filippo took the stand, no defense objection was interposed to his testimony. As defendants point out, if objection had been made, the witness' statements about what the alleged victim of the armed robbery said to him should not have been admitted because they were hearsay. (*People v. Carpenter* (1963), 28 Ill.2d 116, 121, 190 N.E.2d 738.) However, if there was any error in this regard, it was, in our opinion, harmless beyond a reasonable doubt. (*Chapman v. California* (1967), 386 U.S. 18; *People v. Moore* (1972), 51 Ill.2d 79, 82, 281 N.E.2d 294.) The evidence of guilt here was overwhelming. The State's evidence was, essentially, unimpeached by the defense. The only witness for the defense, whose evidence was equivocal at best, was severely impeached by the State.

■■ Although not argued in the briefs, we note that the seven-to-ten-year sentences for aggravated battery, being a Class 3 felony, contravene the provisions of the new Unified Code of Corrections (Ill. Rev. Stat. 1972 Supp., ch. 38, par. 12—4(d), par. 1005—8—1(c)2(4)). The minimum of those sentences as to both defendants is therefore reduced from seven years to three years and four months, and, as so modified, the sentences are affirmed. Ligon's murder sentence of 20 to 40 years is also affirmed.

In part affirmed.

In part affirmed as modified.

LORENZ and SULLIVAN, JJ., concur.