THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, *v.* JAMES W. JOHNSON, Defendant-Appellee.

First District (1st Division) No. 80-2142

Opinion filed August 24, 1981.

Richard M. Daley, State's Attorney, of Chicago (Marcia B. Orr, Joel A. Stein, and Thomas G. Dicianni, Assistant State's Attorneys, of counsel), for the People.

James J. Doherty, Public Defender, of Chicago (Donald S. Honchell, Assistant Public Defender, of counsel), for appellee.

Mr. JUSTICE GOLDBERG delivered the opinion of the court:

James W. Johnson (defendant) was charged with attempt armed robbery. The defendant filed a motion to quash the arrest and to suppress evidence. The trial court granted the motion. The People appeal.

The issues were decided on a stipulation, without hearing testimony. The stipulation establishes that on August 10, 1979, Chicago police officers Reagan and Glen interviewed Phyllis McGee, a victim of an attempt armed robbery on the previous day. McGee informed them her assailant was known to her for some 10 years by the name "Syrup." Thereafter, in conversation with another person, the officers learned the suspect lived at 4112 South Ellis Avenue in Chicago. They proceeded immediately to that address.

When the police knocked at the door, an elderly woman, Georgia Jordan, opened the front door. The screen door remained closed. The officers properly identified themselves. Mrs. Jordan is the grandmother of the defendant. She and defendant are domiciled at that address. The police officers then noticed defendant on a stairway inside the house. They asked him if he was "Syrup." He answered that he was.

Officer Reagan then told Mrs. Jordan "he wish[ed] to make an arrest upon the person that they saw on the premises." She opened the screen door, which had remained closed throughout the conversation. The policemen entered the house and placed defendant under arrest. Defendant and Mrs. Jordan neither invited the officers to enter nor objected to their entry. The police officers had probable cause to arrest defendant but they did not have a search warrant or an arrest warrant.

At the hearing, the defendant conceded the police had probable cause for the arrest. The State's Attorney conceded there were no exigent circumstances which would eliminate the need for a warrant. It is agreed defendant seeks to suppress statements made by defendant at his home and subsequently at the police station and also physical evidence.

The People contend consent to enter the premises was given to the police by an authorized person; absent such consent exigent circumstances made entry into the home reasonable; the law forbidding entry of a home without a warrant should not be given retroactive effect; and, even assuming the arrest illegal, statements made by defendant at the police station were competent evidence.

## I

The People are correct that Mrs. Jordan, as cotenant of the premises, had the right to consent to the entry of the police, and if she manifested a valid, voluntary consent, the arrest of defendant was legal. (See *United States v. Matlock* (1974), 415 U.S. 164, 169-72, 39 L. Ed. 2d 242, 248-50, 94 S. Ct. 988, 991-93.) Generally, the issue of consent is one of fact to be determined by the totality of circumstances, and we will not disturb such a finding unless it is clearly unreasonable. *(People v. DeMorrow* (1974), 59 Ill. 2d 352, 358, 320 N.E.2d 1.) However, in the case at bar, the determination of consent was based on a stipulation; therefore, there are no judicial findings of fact upon which this court can rely.

The United States Supreme Court in *Schneckloth v. Bustamonte* (1973), 412 U.S. 218, 248, 36 L. Ed. 2d 854, 875, 93 S. Ct. 2041, 2059, held:

"[W]hen the subject of a search is not in custody and the State attempts to justify a search on the basis of his consent, the Fourth and Fourteenth Amendments require that it demonstrate that the consent was in fact voluntarily given, and not the result of duress or coercion, express or implied."

Furthermore, for the State to establish voluntary consent, it must show more than mere "acquiescence to a claim of lawful authority." *Bumper v. North Carolina* (1968), 391 U.S. 543, 548-49, 20 L. Ed. 2d 797, 802, 88 S. Ct. 1788, 1792.

In the case at bar, the stipulation shows only that Mrs. Jordan opened the door when told the police "were there to arrest that man." The police

apparently never even asked permission to enter. Furthermore, the stipulation is silent as to the subjective state of mind of Mrs. Jordan, upon which the matter of voluntariness is necessarily based. See *Schneckloth*, 412 U.S. 218, 247-48, 36 L. Ed. 2d 854, 874-75, 93 S. Ct. 2041, 2058, and cases there cited.

■■ A finding by this court of valid consent based on the stipulation of facts before us would imply that merely opening a door without comment in response to a police officer's statement that he wished to enter would constitute consent as a matter of law. In the case before us the People have shown at most only an acquiescence to authority. We agree with the finding of the trial court that the State has failed to demonstrate a voluntary consent.

## II

In *Payton v. New York* (1980), 445 U.S. 573, 63 L. Ed. 2d 639, 100 S. Ct. 1371, the Supreme Court held "the warrantless, nonexigent entry of a private residence, for the purpose of effectuating a felony arrest, is unconstitutional." (*People v. Abney* (1980), 81 Ill. 2d 159, 162, 407 N.E.2d 543.) Citing *Abney*, the People maintain that exigent circumstances surrounding the arrest of defendant in the case at bar excuse the warrant requirement. The People argue the police were justified in "seizing the opportunity" to quickly arrest a "dangerous" "armed suspect." We find *Abney* inapposite to the case at bar. In *Abney* the suspect was wanted for beating a man with a crowbar and a pistol. The police went to his home approximately 1½ hours after the attack. The short time span between the attack and the arrest, the fact that the suspect was armed with deadly weapons, and that he showed violent propensities immediately before being apprehended establish the "unusual opportunity to quickly apprehend an armed [and dangerous] suspect * * *." *Abney*, 81 Ill. 2d 159, 169.

■■ On the contrary, in the case at bar, the arrest occurred the day after the incident, defendant had displayed no actual acts of violence, and the weapon with which he was allegedly armed was described in the information as a pair of scissors. We acknowledge that a scissors is potentially a lethal weapon. But such potential weapons would be found in the home of virtually any person. We conclude there were no exigent circumstances in the instant case which would excuse the warrantless entry and arrest. Knowing the identity and home address of the suspect, the police officers had ample opportunity to obtain a warrant before the arrest. In our opinion the instant case epitomizes the type of "routine" arrest referred to in *Payton*, 445 U.S. 573, 591, 63 L. Ed. 2d 639, 653, 100 S. Ct. 1371, 1382.

We reach the conclusion of nonexigency without the need of consid-

ering the defendant's contention of express waiver of that issue by the People.

## III

■■ The People next contend *Payton* should not be applied retroactively. We reject this argument. Although Illinois has a statute (Ill. Rev. Stat. 1979, ch. 38, par. 107—5(d)) very similar to the one invalidated in *Payton*, 445 U.S. 573, 598 n.46, 63 L. Ed. 2d 639, 658 n.46, 100 S. Ct. 1371, 1386 n.46, the requirement of exigent circumstances was "judicially engrafted upon the [Illinois] statute. The statute, as construed, is thus in compliance with the constitutional guidelines enunciated in *Payton*." (*Abney*, 81 Ill. 2d 159, 168.) Furthermore, in *People v. Robinson* (1980), 91 Ill. App. 3d 1138, 1142, 415 N.E.2d 585, we held "the retroactivity of *Payton* is not an issue here, as * * * *Payton* did not alter the law in Illinois governing warrantless entries into homes for the purpose of making an arrest." The *Robinson* court added, "Thus, the principle enunciated in *Payton* merely reaffirms the position previously taken by our courts." 91 Ill. App. 3d 1138, 1142-43.

## IV

■■ We must now address the issue of the scope of the suppression order. We are obliged to determine whether a statement made by defendant to a prosecutor in the police station after the arrest should have been suppressed. The United States Supreme Court has established that after an illegal arrest, "the burden of showing admissibility [of evidence thereby obtained] rests, of course, on the prosecution." *Brown v. Illinois* (1975), 422 U.S. 590, 604, 45 L. Ed. 2d 416, 427, 95 S. Ct. 2254, 2262.

The *Brown* court established four factors which must be examined in determining whether a statement given while in custody is free from the taint of an illegal arrest: the giving of *Miranda* warnings, the temporal proximity between the arrest and the statement, intervening circumstances between the two events, and existence of purposeful police misconduct in the arrest or interrogation. *Brown*, 422 U.S. 590, 603-04, 45 L. Ed. 2d 416, 427, 95 S. Ct. 2254, 2261-62.

■■ Once again, the stipulation is silent as to all of these critical factors. We do not know whether defendant was advised of his rights under *Miranda*. We do not know the temporal proximity of the statement and the arrest. There is no mention in the stipulation regarding any intervening circumstances between the arrest and the statement. Finally, there is no evidence as to the good faith of the police officers. The record does not provide this court with sufficient facts to determine whether the statement was free from the taint of the illegal arrest. It follows the State has

failed to fulfill its burden of showing the statement is admissible. We are constrained to agree with the trial court that the statement made by defendant should be suppressed as a fruit of the illegal arrest.

For these reasons the order appealed from is affirmed.

Order affirmed.

CAMPBELL, P. J., and O'CONNOR, J., concur.