**UNITED STATES of America, ex rel., Virgil Cotty ROBINSON, Petitioner,**

v.

**George C. WELBORN, Warden, et al., Respondents.**

No. 93 C 1991.

United States District Court, N.D. Illinois, E.D.

Feb. 23, 1994.

Virgil Robinson, pro se.

Terence Madsen, Illinois Attorney General's Office, Chicago, IL, for defendant.

## MEMORANDUM OPINION AND ORDER

ALESIA, District Judge.

Now before this court is Virgil Robinson's pro se petition for a writ of habeas corpus. Robinson alleges that the application of day-for-day good time credits to his sentence, instead of statutory and compensatory credits, violates the *ex post facto* clause of the United States Constitution. U.S. CONST. art. I, § 10. Respondent moves this court to dismiss Robinson's petition as procedurally defaulted, as an abuse of the writ, or on the merits. For the reasons set forth below, Respondent's motion is granted and Robinson's petition is denied.

### I. BACKGROUND

On September 21, 1977, Robinson shot and killed Stephen Taylor at the door of Taylor's apartment. After a jury trial, Robinson was found guilty of murder, and in 1979 he was sentenced to 200 to 600 years. The subsequent procedural history provided to the court and discernable from the case law is as follows: On direct appeal, the Illinois Appellate Court affirmed Robinson's conviction, 91 Ill.App.3d 1138, 47 Ill.Dec. 580, 415 N.E.2d 585 (1st Dist.1980). In 1981, Robinson unsuccessfully petitioned the United States District Court for a writ of habeas corpus. The Seventh Circuit affirmed the denial, 727 F.2d 1112 (7th Cir.1984), and the United States Supreme Court denied *certiorari,* 469 U.S. 930, 105 S.Ct. 324, 83 L.Ed.2d 261 (1984). In 1992, Robinson sought and was denied post-conviction relief from the Illinois Appellate Court. In February 1993, the Illinois Supreme Court denied Robinson's petition for leave to appeal his cause of action. In July 1993, petitioner filed his second petition for writ of a habeas corpus in the United States District Court. This court dismissed counts 1 through 3 of Robinson's petition but granted Robinson leave to amend Count 4 of his

petition. Robinson's amended complaint is now before this court.[1]

In his amended complaint, Robinson alleges that the application of day-for-day good conduct credits to his sentence instead of statutory and compensatory good-time credits violates the *ex post facto* prohibition of the United States Constitution. U.S. CONST. art. I, § 10. At the time Robinson committed the offense for which he is now incarcerated, Illinois law authorized a system awarding "statutory and compensatory good-time" credits to inmates. ILL.REV.STAT. ch. 38, ¶¶ 1003–6–3, 1003–12–5 (1977). After Robinson committed the offense but before his trial and sentencing, the Illinois legislature changed the law to a system of "day-for-day good conduct" credits. ILL.REV.STAT. ch. 38, ¶ 1003–6–3(a)(1) (1978 Supp.).[2] Robinson claims that he is harmed by the retroactive application of the law because awarding good conduct credit on a day-for-day basis instead of statutory and compensatory good-time credits results in a longer period of incarceration for him. Thus, Robinson argues that he is entitled to have his good conduct credit recalculated under the statutory and compensatory good-time scheme.

In response, Respondent contends that Robinson's petition should be dismissed because he has procedurally defaulted his *ex post facto* claim. Respondent claims that Robinson did not adequately present his *ex post facto* claim during his state court proceedings and, as a result, he has forfeited his right to bring the claim. Brief for the Respondent, at 3. In the alternative, Respondent asserts that Robinson's petition should be dismissed as an abuse of the writ because Robinson previously has sought habeas corpus relief in the District Court. Finally, Respondent contends that Robinson's *ex post facto* claim may also properly be denied on its merits.

## II. DISCUSSION

### A. Procedural Default

■ Robinson brings his petition pursuant to 28 U.S.C. § 2254, the federal habeas corpus statute for state prisoners. A federal court may entertain a habeas corpus petition only if the petitioner has exhausted all state judicial remedies and presented all claims during the state court proceedings. 28 U.S.C. § 2254; *Henderson v. Thieret,* 859 F.2d 492, 496 (7th Cir.1988), *cert. denied, Henderson v. Greer,* 490 U.S. 1009, 109 S.Ct. 1648, 104 L.Ed.2d 163 (1989). Failure to first present a constitutional claim to the state court operates as waiver or procedural default. *Coleman v. Thompson,* 501 U.S. 722, ——, 111 S.Ct. 2546, 2555, 115 L.Ed.2d 640 (1991); *Morrison v. Duckworth,* 898 F.2d 1298, 1300 (7th Cir.1990). This "present-ment" requirement is intended to preserve principles of federalism and comity by providing the state courts with a fair opportunity to consider and correct the alleged constitutional violations. *Morrison v. Duckworth,* 898 F.2d 1298, 1300 (7th Cir.1990); *Anderson v. Harless,* 459 U.S. 4, 6, 103 S.Ct. 276, 277, 74 L.Ed.2d 3 (1982).

■ To adequately present a claim to the state court, the claim "must have been presented in such a way as to fairly alert the state court to any applicable constitutional grounds for the claim." *United States ex rel. Sullivan v. Fairman,* 731 F.2d 450, 453 (7th Cir.1984). A district court will find that a state court did not have a fair opportunity to consider or correct the alleged constitutional defect where the argument to the state court does not do the following: "(a) rel[y] on pertinent federal cases employing constitutional analysis; (b) rel[y] on state cases employing constitutional analysis in like fact situations; (c) assert[ ] the claim in terms so particular as to call to mind a specific right protected by the Constitution ... [or] (d) alleg[e] a pattern of facts that is well within the mainstream of constitutional litigation." *Id.* at 454 (quoting *Daye v. Attorney General of New York,* 696 F.2d 186, 194 (2d Cir.1982) (en banc)).

■ Respondent argues that petitioner procedurally defaulted on his *ex post facto*

---

1. In his amended complaint, Robinson again raises Counts 1 through 3. Because the Court has already dismissed these counts, the Court will not address these claims.

2. This statute has been recodified at 730 ILCS 5/3–6–3.

claim because Robinson's only other claim in prior appeals relating to a defect in the calculation of his sentence was distinct from his *ex post facto* claim. In his 1992 petition to Illinois Appellate Court for post-conviction relief, Robinson alleged that the trial court erred by not allowing him to choose between sentencing him under the Amendatory Act of 1977 ("the Act") and the sentencing statute in effect prior to the Act. Under the old system, a convicted felon was sentenced to an indeterminate sentence stating a minimum and maximum number of years for which the felon could be incarcerated. ILL.REV.STAT. ch. 38, § 1005–8–1 (1977). The Act replaced this system of sentencing with a new scheme of determinate sentencing. Robinson was sentenced to an indeterminate sentence, of 200–600 years, pursuant to the law in effect at the time Robinson committed the offense. Because the Act was enacted before Robinson's sentencing, Robinson contended that "he should have been permitted to elect between sentencing under the statute in effect at the time of the offense, and sentencing under the statute in effect at the time of his trial." Brief for Petitioner's Post–Conviction Petition of 1992, at 10. Thus, Robinson sought to have his sentence recalculated as a determinate amount of time.

In contrast, Robinson now contests the application of day-for-day good conduct credits to his sentence instead of statutory and compensatory good-time credits. No mention is made in Robinson's present amended complaint of a defect in the original calculation of his sentence. Moreover, Robinson's legal theories behind the two claims are distinct. In Robinson's 1992 post-conviction petition, he alleged that the law in effect at the time of his sentencing should have been applied to determine his sentence. In contrast, Robinson now maintains that the law in effect *prior* to February 1978 should be applied, *i.e.*, the law in force at the time of his commission of the offense. In essence, Robinson's present position is exactly the opposite of the position he took in his 1992 petition.

In view of these facts, the court agrees with Respondent that Robinson procedurally defaulted by not fairly presenting his *ex post facto* claim to the state court. The state court could not be expected to discern an *ex post facto* claim from the facts as Robinson presented them in his state court petition. Disputing the manner of calculating a convicted defendant's sentence is unrelated to an action alleging that good conduct credits should be awarded according to a different statutory scheme. Although both allegations ultimately claim that the defendant is entitled to spend less time imprisoned, raising the issue of original sentence calculation in a post-conviction brief does not satisfy a defendant's obligation to present a claim regarding good conduct credits to the court to avoid procedurally defaulting that claim. Furthermore, Robinson's claim argued for, not against, retroactive application of the law. No overlap exists between the constitutional analyses required to thoroughly examine both claims. Even though both claims involve the application of the Amendatory Act of 1977 to Robinson, the issue of original sentence calculation does not put a court on notice that a claim exists as to the application of good conduct credits to Robinson's sentence. In sum, Robinson can satisfy none of the aforementioned elements mandated by *United States ex rel. Sullivan v. Fairman.*

### B. Cause and Prejudice

Although we have determined that Robinson procedurally defaulted on his *ex post facto* claim, this court may hear his petition for habeas corpus if Robinson can show cause and actual prejudice for the default or that the denial of his petition would result in a miscarriage of justice.[3] *Murray v. Carrier*, 477 U.S. 478, 496, 106 S.Ct. 2639, 2649, 91 L.Ed.2d 397 (1986); *United States ex rel. Duncan v. O'Leary*, 806 F.2d 1307 (7th Cir.1986). Cause is defined as "some external objective factor, such as interference

---

**3.** In order to demonstrate that the miscarriage of justice has occurred, a petitioner must demonstrate that the constitutional violation has resulted in the conviction of an innocent person. *Murray v. Carrier*, 477 U.S. 478, 495–96, 106 S.Ct. 2639, 2649, 91 L.Ed.2d 397 (1986). This exception does not apply here as Robinson's claim does not dispute his guilt, only the method of crediting him for good time served.

by officials or unavailability of the factual or legal basis for a claim, which impeded compliance with the state's procedural rule." *Barksdale v. Lane,* 957 F.2d 379, 385 (7th Cir.) (citing *Carrier,* 477 U.S. at 488, 106 S.Ct. at 2304), *cert. denied,* —— U.S. ——, 113 S.Ct. 257, 121 L.Ed.2d 189 (1992).

■ In order to show cause for failing to bring his *ex post facto* claim in state court proceedings, Robinson states that the Records Office of the Department of Corrections ("Department") "led him to believe" through "acts and omissions" that he was receiving statutory and compensatory good time credits, instead of day-for-day good time credits. Petitioner's Brief in Opposition to Dismissal, at p. 2. In addition, Robinson states that he "was unable to obtain meaningful assistance from the Department of Corrections library systems." *Id.* at p. 5. Robinson does not state specifically what or when the Department conveyed the alleged misinformation to him, or how he eventually obtained accurate information. Robinson asserts, however, that the factual basis of his claim was unavailable to him as a result of the Department's misinformation, and he was therefore previously unable to raise his *ex post facto* claim. *Id.* at p. 2.

We need not decide whether the alleged deceptions by the Department of Corrections warrant a finding of cause because the court finds that Robinson has not demonstrated prejudice. Robinson has alleged that applying the day-for-day good time credits instead of statutory and compensatory good conduct credits to his sentence unconstitutionally increases his time of incarceration. After a careful examination of the issue, however, the court agrees with Respondent that Robinson has not adequately demonstrated that he is harmed by the application of day-for-day credits to his sentence. Because the law surrounding the application of good conduct credits to a prisoner is complex, the court undertakes a brief history of Illinois good conduct credits before turning to the specifics of Robinson's case.

Until February 1, 1978, Illinois law provided for a system of indeterminate sentencing for felonies. ILL.REV.STAT. ch. 38, ¶ 1005–8–1 (1977). Under this scheme, good-time cred-

its were applied to reduce the minimum and maximum terms of a prisoner's sentence according to a statutory good-time credit system. ILL.REV.STAT. ch. 38, ¶ 1003–6–3 (1977). The good-time credit was awarded at a progressive rate during the inmate's term, reaching an annual maximum good-time credit of six months during the sixth year. After the sixth year, a prisoner was eligible for six months good-time credit annually. *Id.* In January 1973, the Illinois legislature authorized a supplemental credit award, under which the Department of Corrections ("Department") could award additional "compensatory" good-time credit for performing work assignments or participating in other Department programs. ILL.REV.STAT. ch. 38, § 1003–12–5 (1973). A prisoner could earn up to 7½ days per month of compensatory good credit.

Effective February 1, 1978, the Illinois legislature amended the Unified Code of Corrections and abolished the statutory and compensatory good-time credit system. ILL. REV.STAT. ch. 38, ¶¶ 1003–6–3, 1003–12–5. In its place, the new amendments direct the Department to establish rules and regulations that award good-time credit on a day-for-day basis. Under the regulation subsequently promulgated by the Department, a prisoner serving a determinate sentence was entitled to earn one day of good-time credit for every day served in prison. Because an inmate could no longer earn good-time credits for work assignments, however, in some instances the day-for-day system proved to be less advantageous for inmates. *Barksdale v. Franzen,* 700 F.2d 1138, 1140 (7th Cir. 1983). In order to allow an inmate to partake in the more beneficial plan, the Department applies the day-for-day credit system to indeterminate sentences only if it is more beneficial than statutory and compensatory good time credits. ILL.ADMIN.CODE tit. 20, § 107.120.

■ The question of which system is more beneficial is a "prisoner-specific" inquiry, and the means by which to calculate the more advantageous system is complex. *United States ex rel. Walker v. O'Leary,* 727 F.Supp. 444, 447–48 (N.D.Ill.1989). Because of the difficulty of ascertaining which sen-

tencing scheme results in a potentially shorter sentence, a defendant should submit an affidavit detailing how his sentence is computed under each system. *Id.* at 448.

In the present case, Robinson has provided this court with only the barest guidelines from which to calculate the two sentences, and Respondent has provided no information regarding the computation of Robinson's good conduct credits. From the information given and ascertained through statutory and case law, however, this court finds that Robinson has not demonstrated that he is harmed by the application of day-for-day good conduct credits to his sentence.

Under the statutory good-time credit system, an inmate whose sentence is a minimum of twenty years or more was eligible for parole after eleven years and three months of time was served. An inmate's sentence could further be reduced by three months each year for work assignments completed within the year. Therefore, under the statutory and compensatory good-time system, Robinson would be eligible for parole after 8 years and 3 months. To this figure, two years are added because Robinson has received an additional sentence of four years since the imposition of his sentence for murder.[4] This calculation yields a minimum possible sentence of 10 years and 3 months for Robinson.

Robinson does not outline the application of the day-for-day good-time credits to his sentence, but he has attached a worksheet filled out by the Department to his Brief in Opposition to Dismissal stating that his sentence has been calculated under the day-for-day credit system. The sheet indicates that under the day-for-day system Robinson's first opportunity for parole was 10 years after his incarceration, plus the additional two years for his second conviction. Initially, then, the day-for-day method of calculation appears less favorable. A closer look, however, casts this view into doubt. The sheet, which is subheaded "Revocation of Good Conduct Credits—Indeterminate Sentence,"

indicates that for one reason or another, Robinson has had 10 years and 1 month added to his sentence. Robinson makes no attempt to explain the additional time he must serve, although it appears that it is a good conduct credit revocation.[5] Thus, by the face of the attached sheet, Robinson's claim that he is entitled to release after serving 10 years and 3 months cannot be true. This court is not required to grant relief on the basis of which credit scheme would have resulted in a shorter sentence had Robinson been a model prisoner. Robinson provides no explanation as to how his sentence should be calculated considering that he has lost over 10 years of credit to his sentence.

Thus, the court concludes that Robinson cannot show that he is prejudiced by the application of day-for-day good conduct credits to his sentence. Robinson has provided the court with no framework from which to find that one credit scheme is more beneficial to him than the other. Because Robinson has not sufficiently demonstrated prejudice, this court therefore finds that Robinson has procedurally defaulted his claim by failing to present it to the state court.

**C. *Other Grounds for Dismissal***

 Although we need not further address whether Robinson's petition should be dismissed on its merits, we note that for the reasons outlined above, Robinson's petition must fail because it constitutes abuse of the writ. The present petition represents Robinson's second attempt to secure federal collateral relief. Under the doctrine of abuse of the writ, federal courts may "decline to entertain a claim presented for the first time in a second or subsequent petition for a writ of habeas corpus." *McCleskey v. Zant*, 499 U.S. 467, 468, 111 S.Ct. 1454, 1457, 113 L.Ed.2d 517 (1991); *see also* 28 U.S.C. § 2254 Rule 9(b). A petitioner can abuse the writ by failing to raise a claim in his prior petition, whether or not the failure was a

---

4. It is not in dispute that day-for-day good conduct credits apply to the additional four-year sentence.

5. The worksheet specifically revokes two months of good conduct credits. The remaining nine years and 11 months appears under a heading stating "Time Lost."

result of the petitioner's deliberate choice. *Id.*, 499 U.S. at 489, 111 S.Ct. at 1468 (citing *Delo v. Stokes*, 495 U.S. 320, 110 S.Ct. 1880, 109 L.Ed.2d 325 (1990); *Antone v. Dugger*, 465 U.S. 200, 205–06, 104 S.Ct. 962, 964–65, 79 L.Ed.2d 147 (1984) (per curiam); 28 U.S.C. § 2244(b) (recognizing that a petitioner can abuse the writ in a fashion that does not constitute deliberate abandonment)). Identical to procedural default cases, the cause and prejudice standard applies to determine whether a court may hear a claim which the petitioner failed to raise in a prior federal habeas corpus petition. *McCleskey*, 499 U.S. at 493, 111 S.Ct. at 1470. Therefore, applying the above cause and prejudice analysis, this court concludes that Robinson's petition may also be dismissed for abuse of the writ, as Robinson has failed to establish the necessary prejudice.

### III. *CONCLUSION*

For all the foregoing reasons, Robinson's petition for writ of habeas corpus is denied. This case is dismissed with prejudice.